1998-NMCA-060

957 P.2d 1153

**Howard CONNICK, Worker–Appellee,**

v.

**COUNTY OF BERNALILLO, Self–Insured, Employer/Insurer–Appellant.**

**No. 17227.**

Court of Appeals of New Mexico.

Feb. 9, 1998.

Richard B. Walker, Richard B. Walker, P.A., Albuquerque, for Appellee.

Christopher W. Nickels, Julie A. Wittenberger, Sturges, Houston & Johanson, P.C., John H. Sinclair, Jr., Hatch, Allen & Shepherd, P.A., Albuquerque, for Appellant.

## OPINION

BOSSON, Judge.

1. This workers' compensation case presents a question of first impression. We de-

cide whether a worker who is receiving permanent partial disability benefits may legally continue to receive those benefits, in whole or in part, after being convicted and incarcerated for the commission of a felony. We hold that during the period of his incarceration, the worker may continue to receive that portion of benefits attributed to his physical impairment, but he is not entitled to have those benefits enhanced by the statutory modifiers of NMSA 1978, Section 52–1–26 (1990) (effective Jan. 1, 1991) which are designed to measure employment capacity. Because the Claimant in this case was awarded full benefits to continue even while in prison, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

2. Claimant was injured in 1991. Eventually, Claimant was assigned an impairment rating of 22%, and he received additional benefits based on the statutory modifiers of Section 52–1–26, for a total compensation calculated at 46% of his pre-injury wage. Subsequently, Claimant pleaded guilty to the second-degree murder of his wife, and on May 15, 1995 Claimant was sentenced to a six-year term in prison and was incarcerated. Prior to being imprisoned, Claimant had received a favorable determination from the Social Security Administration which had awarded him total disability benefits. By operation of federal law, however, those benefits were suspended for the duration of Claimant's incarceration. *See* 42 U .S.C.A. § 402(x)(*l* )(A)(I) (1994).

3. Upon Claimant's incarceration, Employer reduced Claimant's benefits to 22%, reflecting Claimant's physical impairment rating. Claimant filed a complaint with the Workers' Compensation Administration to increase the benefits back to 46%. The workers' compensation judge (WCJ) entered a finding of undisputed fact that, prior to his incarceration, Claimant had attempted to return to work at a comparable wage but could not perform the job offered because of his physical limitations. Claimant's petition stated that he had not been able to return to work since his injury in 1991. On cross-motions for summary judgment, the WCJ

awarded Claimant permanent partial disability benefits of 46% to continue during his incarceration. Employer appeals that judgment, arguing that Claimant's incarceration should have suspended *all* benefits during the period of his incarceration, or, in the alternative, that if Claimant remains entitled to any benefits, they should be restricted to those based solely on the impairment rating of 22%.

## ANALYSIS

■ 4. The Workers' Compensation Act (the Act) does not offer explicit guidance in this situation. Claimant argues there is no affirmative, statutory authority for Employer suspending benefits during incarceration. While silence in the Act with respect to this specific situation may be significant, the Act does not leave us totally without guidance, and further, we are not persuaded that the Act should be read so literally that its legislative intent is frustrated. *See State ex rel. Helman v. Gallegos,* 117 N.M. 346, 871 P.2d 1352 (1994). We look first to the legislative purpose implicit in the statutory scheme.

5. The Act is the result of a legislative balancing in which employers are subject to liability without fault for work-related injuries and a worker's remedy against an employer, for a work-related injury, is limited to the compensation provided in the Act. *See* NMSA 1978, § 52–1–9 (1973); *Mieras v. Dyncorp,* 1996–NMCA–095, ¶ 30, 122 N.M. 401, 925 P.2d 518. New Mexico has adopted a workers' compensation scheme based on evaluating the loss of earning capacity. *See Madrid v. St. Joseph Hosp.,* 1996–NMSC–064, ¶ 29, 122 N.M. 524, 928 P.2d 250. Loss of earning capacity attempts to reconcile a pure wage-loss theory and a pure physical-impairment theory. *See Varela v. Arizona Pub. Serv.,* 109 N.M. 306, 308, 784 P.2d 1049, 1051 (Ct.App.1989). In essence, the New Mexico scheme is an industry insurance plan to compensate injured workers for loss of earning capacity as determined by statute.

6. For workers who have suffered permanent partial disability, the Act provides, 1) a determination of physical impairment rating, and 2) a potential modification of that impairment rating based on the worker's age, education, job skills, and residual physical capac-

ity after the injury, which is designed to assess the likelihood of the worker being able to return to work in the future [hereafter "statutory modifiers"]. *See* NMSA 1978, §§ 52–1–24 to –26.4 (1990) (effective Jan. 1, 1991). However, if a worker returns to work at a wage equal to or greater than the pre-injury wage, the permanent partial disability rating remains at the level of the worker's impairment rating and is not subject to the statutory modifiers, no matter what his age, education and physical capacity. Similarly, the worker's benefits are not decreased below impairment level despite worker's gainful employment. In pertinent part, the Act states at Section 52–1–26:

C. Permanent partial disability shall be determined by calculating the worker's impairment as modified by his age, education and physical capacity, pursuant to Sections 52–1–26.1 through 52–1–26.4 NMSA 1978; provided that, regardless of the actual calculation of impairment as modified by the worker's age, education and physical capacity, the percentage of disability awarded shall not exceed ninety-nine percent.

D. If, on or after the date of maximum medical improvement, an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his impairment and shall not be subject to the modifications calculated pursuant to Sections 52–1–26 .1 through 52–1–26.4 NMSA 1978.

The statutory incentive to return to work is unmistakable. The legislature has explicitly stated that the policy and purpose behind this legislation is to provide "every person who suffers a compensable injury with resulting permanent partial disability ... the opportunity to return to gainful employment as soon as possible with minimal dependence on compensation awards." Section 52–1–26(A).

7. This Court has previously had occasion to interpret Section 52–1–26 in a somewhat similar context. *See Jeffrey v. Hays Plumbing & Heating,* 118 N.M. 60, 63, 878 P.2d 1009, 1012 (Ct.App.1994). In *Jeffrey,* the worker decided not to return to work because he preferred to start his own business,

and he rejected the employer's job offer. Nonetheless, the worker claimed that Section 52–1–26(C) entitled him to receive compensation without qualification, at the impairment rating plus the statutory modifiers, because Section 52–1–26(D) only allowed elimination of statutory modifiers if "an injured worker returns to work," and he had not done so. *Jeffrey,* 118 N.M. at 62, 878 P.2d at 1011.

8. Understandably, this Court was not impressed with such slavish adherence to textualism. In rejecting the worker's argument and affirming an award of benefits limited to the worker's impairment rating, we reasoned that a worker could not intentionally evade the provisions of Section 52–1–26(D) by voluntary unemployment or underemployment. We were not dissuaded by the absence from the Act of any express provision to that effect. *Jeffrey,* 118 N.M. at 64, 878 P.2d at 1013. To the contrary, this Court concluded that "[w]e should not attribute to the legislature an undue precision in drafting and thereby frustrate legislative intent when we construe a statute." *Id.* at 63, 878 P.2d at 1012. Relying upon our Supreme Court's opinion in *Gallegos,* we reasoned from the public policy expressed in the Act favoring reemployment, combined with the generally accepted proposition "that one should not be permitted to benefit by refusing to take reasonable steps to help oneself." *Jeffrey* at 64, 878 P.2d at 1013. We cited case law to the same general effect: "In New Mexico, disability benefits are denied if a claimant, through voluntary conduct unconnected with his injury, takes himself out of the labor market." *Feese v. United States West Serv. Link, Inc.,* 113 N.M. 92, 94, 823 P.2d 334, 336 (Ct.App.1991). Thus, after *Jeffrey,* disability benefits (other than impairment) may be denied, reduced, or suspended if a claimant voluntarily and unreasonably takes himself out of the job market.

9. In the present case, Claimant was convicted of a serious felony resulting in his incarceration. Based on the purpose and intent behind Section 52–1–26, and the statutory provision in Subsection D eliminating statutory modifiers in certain circumstances, we believe the legislature intended that the present Claimant would be denied the benefit

of the statutory modifiers, no differently from a worker who, like *Jeffrey*, unreasonably refused his former employer's offer to return to work. Although there is no evidence that a job offer was made in this case, it would have been futile to do so under the circumstances; Claimant's incarceration effectively removed him from the labor market. Because Claimant's inability to return to work resulted from his own conduct, murdering his wife, which is surely "unconnected with his injury," it has the same effect as, and is qualitatively no different from, the voluntary and unreasonable unemployment in *Jeffrey*. *Cf. Aranda v. Mississippi Chem. Corp.*, 93 N.M. 412, 414, 600 P.2d 1202, 1204 (Ct.App.1979).

10. In either case, an award beyond the basic impairment level would directly contradict the fundamental policy and purpose behind the entire statutory scheme, and this we refuse to do. Of equal importance, an award beyond impairment level would implicitly contradict the language of the Act, as it has been interpreted by us in *Jeffrey*, which now treats an unreasonably rejected job offer the same as if worker were reemployed in fact. Obviously, any such offer to Claimant in this case would have been "rejected" by virtue of Claimant's incarceration, and to require such an empty gesture of Employer in this case, as a condition to reducing benefits pursuant to Section 52–1–26(D), would be absurd. Accordingly, we hold that Claimant is not entitled to the benefit of the statutory modifiers during the period of his incarceration.[1]

11. On the other hand, Claimant has suffered a permanent physical impairment which is unchanged by his incarceration. Claimant remains limited by the Act in what

he can recover for his injuries; for example, he could not file a lawsuit in tort to recover from his Employer because the Act remains his exclusive remedy even while he is incarcerated. Thus, the impairment aspect of his claim stands in a different light from the statutory modifiers under Section 52–1–26 which are awarded for a different consideration.

12. Because the Act adopts a loss of earning capacity theory of recovery that reconciles a pure lost-wages theory and a pure physical-impairment theory, we believe the legislature intended to provide some measure of benefits for physical impairment alone, independent of lost wages or ability to return to work. Significantly, Section 52–1–26 provides for disability payments based on impairment even when a worker returns to work at a wage greater than pre-injury wage. This indicates a legislative intent to provide some compensation for the injury apart from the loss of wages.

13. It is only when a worker intentionally causes the injury that he loses benefits for impairment. *See* NMSA 1978, §§ 52–1–11 to –12 (1989) (no compensation benefits due when the injury is caused by a worker's intoxication or willful, intentional infliction of injury). Similarly, when a worker fails to use a safety device or follow safety regulations, the compensation awarded is reduced. *See* NMSA 1978, § 52–1–10(A) (1989). Compensation benefits may also be reduced or suspended when a worker persists in unsanitary or injurious practice that impairs recovery or increases disability. *See* NMSA 1978, § 52–1–51(I) (1990) (effective Jan. 1, 1991). None of these situations apply here. Because the Act evinces a legislative intent to

---

1. In construing the language of Section 52–1–26 we do not grasp intuitively for "a general sense of the legislative policy" as the dissent implies. With respect, we note that the legislature itself has codified that policy at Section 52–1–26(A). We apply only that policy—not what we think the policy might be—but what the legislature has decreed, to an ambiguous situation in Section 52–1–26(D), no differently in our view from what this Court did in *Jeffrey* and consistent with *Ortiz v. Block & Concrete Co.*, 1996–NMCA–097, 122 N.M. 381, 925 P.2d 1. It would be textual absurdity to require Employer in this situation to make an offer of reemployment just so that it could be "rejected" by a worker due to his status

as a prison inmate. Finally, we agree with our colleague that workers' compensation benefits can help not only the worker but the worker's family as well. If there were any indication in this record that Claimant's dependents would be receiving some of these benefits, such as by a legally binding assignment, then we could address that issue separately. But the record is silent, and we cannot speculate. We must presume that the full scope of benefits for which Claimant argues, impairment plus statutory modifiers, would go to him directly, and for the reasons stated we are confident that the Act limits those benefits accordingly under these circumstances.

compensate injured workers for impairments independently of lost wages, we hold that Claimant is entitled to continue to receive benefits based on his impairment rating during his period of incarceration.

14. Shortly after the parties filed their briefs, our Supreme Court issued its opinion in *Benavidez v. Sierra Blanca Motors,* 122 N.M. 209, 922 P.2d 1205 (1996). In *Benavidez,* a claimant's status as a prisoner did not automatically preclude him from receiving workers' compensation benefits. *Id.* at 215, 922 P.2d at 1211. Although the focus of *Benavidez* was on establishing the requisite employer/employee relationship for workers' compensation benefits, it is instructive to note that the status alone of being a prisoner does not preclude eligibility for workers' compensation benefits. *Id.*

15. We recognize that the WCJ entered a conclusion of law stating that Claimant did not have the ability or capacity to earn his pre-injury wage even if he were not incarcerated. The WCJ was persuaded by the parties' stipulation that Claimant could not perform work whether or not incarcerated and, thus, incarceration was irrelevant to continued receipt of compensation benefits. The parties stipulated that Claimant had attempted to return to work at a comparable wage but was unable to do so because of his physical condition; that Claimant was found to be totally disabled by the Social Security Administration; that there was no showing that Claimant had returned to work at a wage equal to or greater than his pre-injury wage, or that Employer had offered him jobs within his physical restrictions that would earn a wage equal to or greater than his pre-injury wage. We believe the WCJ read Section 52–1–26 too narrowly in light of its legislative purpose.

16. The parties have cited case law from numerous jurisdictions in their briefs. While these cases are instructive, they are ultimately inapposite to the present case because they involve awards of total disability benefits, temporary disability benefits, or are based on legislation specific to the jurisdiction. *See, e.g.,* *Crawford v. Midwest Steel Co.,* 517 So.2d 918, 923 (La.Ct.App.1987) (no suspension of permanent total disability benefits to incarcerated claimant; reasoning based in part on the statutory relinquishment of claimant's right to recover damages in tort); *Parker v. Union Camp Corp.,* 108 N.C.App. 85, 422 S.E.2d 585, 586–87 (1992) (suspending permanent total disability benefits to a claimant who became incarcerated based on statute stating that compensation laws do not apply to prisoners who work); *King v. Industrial Comm'n,* 850 P.2d 1281, 1292–96 (Utah Ct.App.1993) (no suspension of temporary total disability benefits to an incarcerated claimant absent statutory language limiting benefits).

**CONCLUSION**

17. We determine that during the period of his incarceration Claimant is not entitled to disability benefits based on the statutory modification of his impairment rating. Conversely, because the Act evinces a legislative intent to compensate workers for impairment independently of lost wages and this case does not fall within any provision that would reduce or eliminate impairment benefits, Claimant is entitled to continue receiving benefits based on his impairment rating. We affirm in part, reverse in part, and remand this case for entry of an order awarding Claimant benefits based solely on his impairment rating.

18. **IT IS SO ORDERED.**

ALARID, J. (specially concurring).

PICKARD, J. (concurring in part, dissenting in part).

ALARID, Judge (Specially Concurring).

19. I concur with the portion of the majority's opinion that holds Defendant is not entitled to the benefits of the workers' compensation statutory modifiers. NMSA 1978, Section 52–1–26 (1990) (effective Jan 1, 1991). Defendant, by committing a felony, has voluntarily removed himself from the job market and therefore, is not eligible for this portion of workers' compensation. *See Jeffrey v. Hays Plumbing & Heating,* 118 N.M. 60, 64, 878 P.2d 1009, 1013 (Ct.App.1994). I concur in the result with the Defendant retaining his 22% permanent partial disability payment. However, I concur only because it

is not our place to make shifts within the worker's compensation statute. Making the kind of policy shift recommended within this opinion is incumbent upon the legislature.

20. I am of the opinion that New Mexico should adopt a policy like that of the Federal Government's Social Security program which tolls workers' compensation benefits while individuals are incarcerated. Under 42 U.S.C. § 402(x)(A)(1) benefits paid for old age, survivors, auxiliary and disability insurance benefits are not paid to individuals while they are incarcerated. The rationale behind the Federal Government's exclusion of such benefits is that the needs of the incarcerated are not as great as the needs of others. *Hopper v. Schweiker,* 596 F.Supp. 689, 692 (M.D.Tenn.1984). During the term of incarceration, the state provides for the fundamental needs of the inmates, such as medical care, food, clothing and shelter. *Id.; see also* 143 Cong. Rec. S1917–04 (1997); 143 Cong. Rec. H1917–04 (1997); 143 Cong. Rec. S2274–03 (1997).

21. The rationale that incarcerated individuals' needs are being met by the state, coupled with the notion that the benefits should be tolled during incarceration, better serves the interests of the injured worker/incarcerated individual. I would recommend tolling workers' compensation benefits for permanent partial disability during the term of incarceration. The incarcerated individual does not need this payment to meet his basic needs as they are provided for by the state. However, if the worker receives these payments while incarcerated, he may use up all of his eligibility years and once released, will not have the security of those payments, when he will most likely be in need of them. If the payments are tolled and resume upon release, the payments may help the worker in the tenuous period of reassimilation into society after release when the state is no longer providing for the worker's needs. In fact, it may help those workers from becoming repeat offenders. If the worker has a permanent disability, obtaining full employment may prove to be difficult, especially just after release from prison. The transition would not be as difficult if the worker was to receive his back worker's compensation payments for his permanent partial disability.

PICKARD, Judge (concurring in part and dissenting in part).

22. I concur in that portion of the opinion that affirms the award of benefits based on a 22% impairment rating, and I dissent from that portion of the opinion that reverses the remainder of the award. In my view, there is nothing in the statutory text that would allow a court to construe the Workers' Compensation Act to deny full benefits to a prisoner who is stipulated to be unable to perform work, whether incarcerated or not.

23. I acknowledge that both *Jeffrey v. Hays Plumbing & Heating,* 118 N.M. 60, 63, 878 P.2d 1009, 1012 (Ct.App.1994), and *State ex rel. Helman v. Gallegos,* 117 N.M. 346, 871 P.2d 1352 (1994), on which it relied, pointed out the dangers of reading statutes too literally. But, importantly, *Jeffrey* expressly recognized the corresponding dangers of interpretation, so that "we must take great care not to substitute our personal preferences for the intentions of the legislature." *See Jeffrey,* 118 N.M. at 63, 878 P.2d at 1012. Thus, both *Jeffrey* and *Helman* did not begin the task of interpretation until the Courts found specific ambiguities in either the language of the particular statutory provision involved or in statutory provisions so related to one another that they had to be read together. *See Helman,* 117 N.M. at 353, 354–55, 871 P.2d at 1359, 1360–61; *Jeffrey,* 118 N.M. at 62–63, 878 P.2d at 1011–12. The same cannot be said in this case, where the majority relies not on specific textual ambiguities, but rather on a general sense of the legislative policy in enacting the 1990 revisions to the Workers' Compensation Act.

24. The error in relying on general legislative policy was made clear by the limitations placed on *Jeffrey* in *Ortiz v. BTU Block & Concrete Co.,* 1996–NMCA–097, ¶¶ 11–13, 122 N.M. 381, 925 P.2d 1. There, we said that policy arguments could assist us in understanding ambiguous legislative text, but they could not be used to alter unambiguous statutory provisions. *Id.* We further noted that expressions of policy that have assisted in interpreting ambiguous statutory provisions

in prior cases could not be used as "free-floating legal rule[s] to be applied whenever a court wishes." *Id.* at ¶ 11. In a similar vein, the Supreme Court cautioned that courts should not construe statutory language as " 'the court may think it ... would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration.' " *Helman,* 117 N.M. at 352, 871 P.2d at 1358 (quoting *Perea v. Baca,* 94 N.M. 624, 627, 614 P.2d 541, 544 (1980)).

25. In this case, the legislative text is clear. It requires, at a minimum, the offer of a job at equal or greater wages and an unreasonable refusal of the offer, if not actual employment in such a job, before compensation benefits may be reduced by elimination of the statutory modifiers. *Jeffrey,* 118 N.M. at 63–64, 878 P.2d at 1012–13. I appreciate that it is the "high duty and responsibility of the judicial branch of government to facilitate and promote the legislature's accomplishment of its purpose," *see Helman,* 117 N.M. at 353, 871 P.2d at 1359, but without textual ambiguity, absurdity, or some other textual indication of mistake or contrary intent, I believe that the law and legislative purpose is better served by using the plain-meaning branch of the statutory-interpretation tree in this case.

26. Finally, even if the legislation at issue here were ambiguous within itself and thus arguably allowed interpretation, as was the case in both *Jeffrey* and *Helman,* I cannot say that the legislative design points so clearly in one direction that it would deny application of the statutory modifiers to people solely because of their incarceration. The purpose of the Workers' Compensation Act is to provide a substitute for lost wages—to keep both workers and their dependents off the public welfare rolls and to make industry bear the burden of injured workers. *See Wylie Corp. v. Mowrer,* 104 N.M. 751, 752, 726 P.2d 1381, 1382 (1986). The record in this case reflects that Worker indeed has two minor children who were dependent on him. I cannot say that the legislature did not intend to protect them by its omission of a forfeiture-of-benefits provision for people who are incarcerated. *See*

*King v. Industrial Comm'n,* 850 P.2d 1281, 1292–96 (Utah Ct.App.1993). Although Utah's scheme is different from ours, the Utah court found the absence of statutory language creating such a forfeiture to be significant. *See id.* I find it equally significant here. *See Ortiz,* 1996–NMCA–097, ¶¶ 11–13, 122 N.M. 381, 925 P.2d 1; *see also Patterson v. Globe Am. Cas. Co.,* 101 N.M. 541, 543, 685 P.2d 396, 398 (Ct.App.1984) (where legislature shows that it knows how to create certain remedies, the fact that it did not create one in a particular situation suggests that it did not intend to).

27. The majority holding otherwise, I respectfully dissent.