**Certiorari Denied, July 19, 2012, No. 33,663**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2012-NMCA-083**

**Filing Date: May 14, 2012**

**Docket No. 30,870**

**JESSE CORDOVA,**

   **Worker-Appellee,**

**v.**

**KSL-UNION and
CCMSI,**

   **Employer/Insurer-Appellants.**

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Gregory D. Griego, Workers' Compensation Judge**

Peter D. White
Santa Fe, NM

for Appellee

David L. Skinner
Albuquerque, NM

Kelly A. Genova, P.C.
Kelly A. Genova
Albuquerque, NM

for Appellants

### OPINION

**VIGIL, Judge.**

**{1}** The Workers' Compensation Judge (WCJ) entered a compensation order ruling that, notwithstanding Worker's voluntary retirement, Worker is entitled to statutory modifier-based permanent partial disability (PPD) benefits under the Workers' Compensation Act (the

Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2007). We affirm on the basis that Worker's decision to retire was reasonable.

## I.    BACKGROUND

**{2}**    On March 27, 2008, Worker was injured when he fell down a slope while cutting wood and suffered a compensable injury to his right shoulder. As a consequence of the injury, Worker was temporarily, totally disabled from March 27, 2008, to April 30, 2009. Employer gave Worker a modified-duty job at his pre-injury wage from the date of the accident until his retirement on April 17, 2008.

**{3}**    Prior to the March 27, 2008 injury, Worker had begun paperwork and preparations for retirement. Worker was eligible to retire and begin receiving his union retirement pension in April 2008 because he satisfied the eligibility requirements of reaching the age of fifty-five and completing thirty years of work with the union. Worker would receive his maximum retirement benefit, and additional time working for the union would not increase his retirement pension. Worker chose to retire on April 17, 2008, and left his temporary modified-duty employment on that date. In order to remain entitled to his union retirement pension, Worker was required to terminate his employment with Employer effective the date he chose to retire, and he was prohibited from working as a union member at any time in the future.

**{4}**    Testimony was presented at trial that Worker had been offered a position at a non-union contracting company as a working foreman after retirement, but he was unable to accept the offer because of the injuries he had sustained while working for Employer. Worker testified that he was unable to perform the type of heavy duty work for which he was qualified due to his injuries and that his injuries impeded his ability to return to work at a non-union job after his retirement in order to collect a second paycheck in addition to his pension. Worker testified that he knew of several companies where he could have applied for post-retirement employment had his injuries not interfered with his ability to work and that he would go back to work if he were able to do so.

**{5}**    Worker reached maximum medical improvement (MMI) on April 30, 2009. *See* § 52-1-24.1 (stating that MMI is "the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability as determined by a health care provider"). At that time, Worker was entitled to PPD benefits pursuant to Section 52-1-26(B). *See id.* (stating that partial disability "means a condition whereby a worker, by reason of injury arising out of and in the course of employment, suffers a permanent impairment").

**{6}**    A key issue presented to the WCJ was whether Worker was precluded from receiving modifier-based PPD benefits and temporary total disability (TTD) benefits because Worker had decided to retire. Following trial, the WCJ entered a memorandum opinion in which he concluded that because no permanent return-to-work offer was made by Employer, Worker was entitled to receive modifier-based PPD benefits despite his decision to retire. However, the WCJ ruled that Worker was not entitled to TTD benefits from the date he retired (April

17, 2008) to the date he reached MMI (April 30, 2009), because Worker "walked away" from the temporary modified-duty employment provided to him by Employer. These conclusions were incorporated in the compensation order, which set forth the WCJ's findings of fact and conclusions of law.

{7}     Pertinent to this appeal, the WCJ findings are that "[w]orker has voluntarily removed himself from the work force by reason of retirement" and that the retirement "was reasonable because retirement was financially rational in order to receive union retirement benefits." The WCJ calculated that Worker is permanently partially disabled with a whole body impairment rating of seven percent. In addition, the WCJ calculated that Worker is entitled to forty-five additional statutory PPD modifiers under Sections 52-1-26.1 through Section 52-1-26.4, for a total PPD impairment of fifty-two percent. Employer appeals.

## II.     ANALYSIS

{8}     On appeal, Employer challenges only the WCJ's award of modifier-based PPD benefits to Worker. Employer asserts, "Worker should not be allowed to obtain PPD based on formula modification as of the date he reached MMI because Worker effectively prevented Employer from making a post-MMI job offer by way of the union retirement on April 17, 2008." We review issues of statutory interpretation and application of the law de novo. *See Att'y Gen. v. N.M. Pub. Regulation Comm'n*, 2011-NMSC-034, ¶ 10, 150 N.M. 174, 258 P.3d 453. "Once we determine the meaning of the statute, we review the record to determine whether the [WCJ's] findings and award are supported by substantial evidence." *Rivera v. Flint Energy*, 2011-NMCA-119, ¶ 4, 268 P.3d 525.

## A.     Permanent Partial Disability Benefits

{9}     PPD benefits are payable under Section 52-1-26 of the Act when a worker suffers a permanent impairment resulting from an injury arising out of and in the course of employment. Section 52-1-26(B) (defining "partial disability" as "a condition whereby a worker, by reason of injury arising out of and in the course of employment, suffers a permanent impairment"). In construing the statute, the Legislature has directed us to consider its declaration of policy and intent as follows:

> A.     As a guide to the interpretation and application of this section, the policy and intent of this legislature is declared to be that every person who suffers a compensable injury with resulting permanent partial disability should be provided with the opportunity to return to gainful employment as soon as possible with minimal dependence on compensation awards.

Section 52-1-26(A). In succeeding subsections, Section 52-1-26 in pertinent part provides:

> C.     Permanent partial disability shall be determined by calculating the worker's impairment as modified by his age, education and physical capacity, pursuant to Sections 52-1-26.1 through 52-1-26.4 NMSA 1978;

provided that, regardless of the actual calculation of impairment as modified by the worker's age, education and physical capacity, the percentage of disability awarded shall not exceed ninety-nine percent.

      D.      If, on or after the date of maximum medical improvement, an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his impairment and shall not be subject to the modifications calculated pursuant to Sections 52-1-26.1 through  52-1-26.4 NMSA 1978.

**{10}**    Thus, PPD benefits are calculated by determining the level of impairment to the worker and adding to the impairment rating a calculation of statutorily defined modifiers under Sections 52-1-26.1 through 52-1-26.4 based on the worker's age, education, and physical capacity. This is what we refer to herein as modifier-based PPD benefits. Sections 52-1-26.1 through Section 52-1-26.4 provide more modifier points to older workers lacking education, skills, and physical capacity than to younger workers with higher efficiencies in those areas, resulting in a higher calculation of benefits for the older, less-educated, less-skilled, and less physically able workers.

**{11}**    In recognition of the statutory scheme, our Supreme Court has previously stated, "The formula incorporates the worker's impairment rating, age, education, and residual physical capacity in order to arrive at a disability rating, which determines the level of benefits available. This complex evaluation scheme was designed to achieve the purpose for which workers' compensation was first enacted, which was to protect injured workers from becoming dependent on public welfare and to provide them with some financial security." *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶¶ 7-8, 122 N.M. 524, 928 P.2d 250 (footnote and citations omitted). Moreover, this method for calculating PPD benefits reflects the intention of the Legislature to address problems associated with a worker's projected difficulty in obtaining and returning to work after reaching MMI. *See Connick v. Cnty. of Bernalillo*, 1998-NMCA-060, ¶ 6, 125 N.M. 119, 957 P.2d 1153 (stating that the statutory modifiers in Sections 52-1-26.1 through Section 52-1-26.4 are "designed to assess the likelihood of the worker being able to return to work in the future").

**{12}**    Likewise, in accordance with the policy expressed in Section 52-1-26(A), to provide workers the "opportunity to return to gainful employment as soon as possible with minimal dependence on compensation awards," the Legislature has included a return-to-work provision in Section 52-1-26(D). *Connick*, 1998-NMCA-060, ¶ 6 (stating that the statutory incentive to return to work in Section 52-1-26 is "unmistakable"). Under this provision, if the worker returns to work at a wage equal to or greater than the worker's pre-injury wage after reaching MMI, the employer must only pay PPD benefits in the amount of the worker's impairment rating and is relieved of paying the statutory modifiers.

**{13}**    We have construed Section 52-1-26(D) as relieving the employer of the liability to pay modifier-based PPD benefits if the worker either (1) accepts employment with the pre-injury employer or a different employer at or above his pre-injury wage, or (2) unreasonably refuses offered employment at or above his pre-injury wage. *See Jeffrey v. Hays Plumbing*

*& Heating*, 118 N.M. 60, 62-63, 878 P.2d 1009, 1011-12 (Ct. App. 1994). Thus, the Act encourages an employer to offer a job to the permanently injured worker within the worker's post-injury abilities and encourages the worker to return to work because modifier-based PPD benefits are not paid if the worker unreasonably refuses an offer to return to work at his pre-injury wage. *See Gonzalez v. Performance Painting, Inc.*, 2011-NMCA-025, ¶ 28, 150 N.M. 306, 258 P.3d 1098 ("Section 52-1-26 benefits both employers and workers. An employer is encouraged to make a rehire offer because it relieves the employer of the obligation to pay modifier benefits. An injured worker is encouraged to get off workers' compensation by returning to work with a wage that is at or above his pre-injury wage."), *cert. granted*, 2011-NMCERT-003, 150 N.M. 620, 264 P.3d 521.

**{14}**    The terms of Worker's retirement effectively prevented Employer from offering employment to Worker to reduce its liability for modified PPD benefits. Thus, Employer argues that it should not be liable to pay modifier-based PPD benefits because Worker voluntarily removed himself from the workforce. We turn to cases addressing similar issues for guidance, mindful that they are not directly on point.

**{15}**    In *Jeffrey*, the employer offered the worker a job at his pre-injury wage after he reached MMI, and the worker rejected the offer in order to start his own business. 118 N.M. at 61, 878 P.2d at 1010. Accordingly, the WCJ applied Section 52-1-26(D), and awarded PPD benefits that were not modified by the worker's age, education, and physical capacity. *Jeffrey*, 118 N.M. at 61, 878 P.2d at 1010. We said that the question on appeal was "whether a worker can evade this provision [Section 52-1-26(D)] by voluntary unemployment or underemployment." *Jeffrey*, 118 N.M. at 64, 878 P.2d at 1013. We held that "permitting such an evasion would be contrary to the Workers' Compensation Act" and reaffirmed that "[i]n New Mexico, disability benefits are denied if a claimant, through voluntary conduct unconnected with his injury, takes himself out of the labor market." *Id.* Further, we stated that "[w]e would violate the policy of encouraging employment and independence from compensation benefits if we interpreted Section 52-1-26 to permit a worker to escape a reduction in benefits by voluntarily remaining unemployed or underemployed." *Jeffrey*, 118 N.M. 64, 878 P.2d at 1013. However, we also recognized that "[r]ejection of the employer's offer does not necessarily mean that the worker is voluntarily unemployed or underemployed" and that a situation could arise where a worker would remain entitled to the statutory modifiers when he *reasonably* refused a return-to-work offer. *Id.* Thus, we held that "an offer rejected by the employee triggers the adjustment provided by Section 52-1-26(D) only if the rejection was unreasonable." *Jeffrey*, 118 N.M. at 64-65, 878 P.2d at 1013-14. We were not required to undertake an analysis of whether the worker's rejection of the employer's offer was unreasonable in *Jeffrey* because the WCJ's finding against the worker on this question was not challenged on appeal, and we affirmed. *Id.* at 65, 878 P.2d at 1014.

**{16}**    In *Connick*, we concluded that a worker who was convicted of killing his wife and incarcerated was not entitled to modifier-based PPD benefits because his criminal act effectively removed him from the job market. 1998-NMCA-060, ¶¶ 9-10. We held that the employer was not required to offer the worker a job because the worker's incarceration prevented him from being able to accept the employer's offer. *Id.* ¶ 10. We stated that "to require such an empty gesture of [the e]mployer in this case, as a condition to reducing

benefits pursuant to Section 52-1-26(D), would be absurd." *Connick*, 1998-NMCA-060, ¶ 10. After concluding that the employer was not required to offer the worker post-MMI work, we noted that the worker's criminal act which removed him from the workforce, "[had] the same effect as, and is qualitatively no different from, the voluntary and unreasonable unemployment in *Jeffrey*." *Id.* ¶ 9.

**{17}** In this case, the WCJ concluded that because Employer did not make Worker an offer of a permanent return to work, Worker is entitled to receive modifier-based PPD benefits, despite Worker's decision to retire. While we disagree with the WCJ's reasoning, we nevertheless affirm the award of modifier-based PPD benefits under the right for any reason doctrine. *See State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 ("Under the 'right for any reason' doctrine, 'we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below.'").

**{18}** It is undisputed that Employer did not make Worker a post-MMI offer of employment at a wage equal to or greater than Worker's pre-injury wage. However, Employer's failure to do so does not, by itself, give rise to liability for modifier-based PPD benefits because Section 52-1-26 does not require an employer to make such an offer. *See* § 52-1-26(D). While the statute encourages an employer to make an employment offer to the worker because the employer will be relieved from paying modifier-based disability if the offer is either accepted or unreasonably refused, the statute does not *require* an employer to do so. *Id.*; *see Gonzalez*, 2011-NMCA-025, ¶ 28 ("An employer is encouraged to make a rehire offer because it relieves the employer of the obligation to pay modifier benefits."). Further, as we concluded in *Connick*, an employer is not required to make a futile return-to-work offer that the worker cannot accept. 1998-NMCA-060, ¶ 10. Having rejected the WCJ's reasoning, we now turn to Employer's arguments and why affirmance of the WCJ order is nevertheless warranted.

**{19}** We disagree with Employer's argument that because Worker's voluntary decision to retire precluded it from making an offer to return to work, Employer should be relieved of its liability to pay Worker modifier-based PPD benefits. While a worker's decision to retire may make an offer of post-MMI employment inconsequential, the result Employer urges us to reach is inconsistent with our previous interpretations of the return-to-work provision of Section 52-1-26(D). *See Jeffrey*, 118 N.M. at 64, 878 P.2d at 1013 (stating that while workers cannot escape Section 52-1-26(D) by voluntarily remaining unemployed or underemployed, "[n]evertheless, it does not follow that the provisions of Section 52-1-26(D) are triggered whenever the employer offers a job at a wage equal to or greater than the worker's pre-injury wage").

**{20}** An employer is relieved of paying modifier-based PPD benefits only when a worker returns to work at or above his pre-injury wage, or voluntarily and unreasonably removes himself from the workforce. *See Jeffrey*, 118 N.M. at 62-63, 878 P.2d at 1011-12. A worker may reasonably refuse a return-to-work offer and remain eligible for modifier-based PPD benefits. *See id.* In accordance with a worker's ability to reasonably refuse a return-to-work offer, it follows that a worker is also permitted to take *reasonable* action that precludes an

employer from making a return-to-work offer. For example, if Employer had offered Worker permanent employment and Worker reasonably refused the offer due to Worker's plans to retire, Worker would have nevertheless been entitled to recover modifier-based PPD benefits under our existing case law. The mere timing of Worker's retirement by itself does not prevent Worker from receiving modifier-based PPD benefits. Accordingly, we conclude that because the WCJ's finding of fact establishes that Worker's retirement was reasonable, Worker is entitled to modifier-based PPD benefits despite his decision to retire before reaching MMI.

**{21}** Employer challenges the finding of fact that Worker's retirement was reasonable on the ground that the decision to retire was reasonable only from Worker's financial perspective. Employer therefore argues that the WCJ's finding that Worker's decision was reasonable violates the policy of the Act in providing fairness to both Worker and Employer. *See* NMSA 1978, § 52-5-1 (1990). Again, we disagree with Employer.

**{22}** *Jeffrey* clearly states that there may be sound, appropriate reasons, from the worker's perspective, for rejecting an employer's offer to return worker to work at a wage equal to or greater than the worker's pre-injury wage. *See Jeffrey*, 118 N.M. at 64, 878 P.2d at 1013. Furthermore, there is nothing in *Jeffrey* which requires a worker to consider the employer's interest in deciding whether to accept the employer's offer. Worker testified that he would gain nothing by remaining at his union employment with Employer because he was already going to receive his maximum retirement benefit. We therefore decline to engage in a reasonableness analysis which requires Worker to consider Employer's interest in making his own employment decision under these circumstances, and we will not overturn the WCJ's finding that Worker's decision to retire was reasonable.

**{23}** Applying the policies and directives of Section 52-1-26 and the reasoning of our case law, we conclude that Worker is entitled to modifier-based PPD benefits in this case. Worker removed himself from the union workforce through retirement, but he wants to return to employment outside of the union. However, Worker's injuries have prevented him from finding subsequent employment after retirement. While Worker chose to retire, he did not choose to get injured, nor did he choose when he would get injured. These circumstances comport with the Legislature's intent for utilizing a modifier-based calculation of PPD disability. *See Connick*, 1998-NMCA-060, ¶ 6 (stating that the statutory modifiers in Sections 52-1-26.1 through Section 52-1-26.4 are "designed to assess the likelihood of the worker being able to return to work in the future"). Further, despite the fact that Employer was unable to make a post-MMI employment offer, Employer will not be required to pay modifier-based PPD benefits if Worker is able to secure employment with a non-union employer at his pre-injury wage. *See* § 52-1-26(D). Thus, interpreting and applying Section 52-1-26 to provide for modifier-based PPD benefits in this case properly recognizes the purposes of PPD benefits and also protects the interests of both Employer and Worker.

**B.     Temporary Total Disability Benefits**

**{24}** In his answer brief, Worker argues that the WCJ committed reversible error in concluding Worker is not entitled to TTD benefits from the date he retired to the date he reached MMI on the basis that Worker "walked away" from the temporary employment offered him by Employer. We decline to address this issue because Worker failed to file a cross appeal requesting this relief. *See State ex rel. State Highway Dep't v. Yurcic*, 85 N.M. 220, 224, 511 P.2d 546, 550 (1973) (declining to address appellee's attack on award of attorney fees where no cross appeal was filed), *modified on other grounds by Cnty. of Doña Ana ex rel. Bd. of Cnty. Comm'rs v. Bennett*, 116 N.M. 778, 867 P.2d 1160 (1994); *Reynolds v. Ruidoso Racing Ass'n*, 69 N.M. 248, 258, 365 P.2d 671, 678 (1961) (declining to address questions attempted to be raised in answer brief where no cross appeal was filed).

## III.    CONCLUSION

**{25}** The compensation order is affirmed.

**{26}    IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for *Cordova v. KSL-Union*, Docket No. 30,870;**

**STATUTES**
Interpretation
Legislative Intent

**WORKERS COMPENSATION**
Disability, Partial
Rate of Compensation