This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**NO. 32,868**

**EVER LUIS NUÑEZ,**

Worker-Petitioner,

v.

**ARMSTRONG GENERAL CONTRACTORS**
**and BUILDERS TRUST OF NEW MEXICO,**

Employer/Insurer-Respondents.


**ORIGINAL PROCEEDING ON CERTIORARI**
**Gregory D. Griego, Workers Compensation Judge**


Benito Sanchez, P.A.
Benito Sanchez
Albuquerque, NM

for Petitioner


Christina Bartosh Goodrow
Albuquerque, NM

for Respondents

# DISPOSITIONAL ORDER OF REVERSAL

{1}     In this companion case to *Gonzalez v. Performance Painting, Inc.*, 2013-NMSC-___, ___ P.3d ___, we are once again asked to determine if an undocumented worker, Ever Luis Nuñez (Worker), is eligible to receive Workers' Compensation Permanent Partial Disability Modifier benefits.  For the reasons that follow, we reverse summary judgment and remand to the Workers' Compensation Administration for a factual determination of whether the employer, Armstrong General Contractors, knew or should have known that Worker was undocumented.

**BACKGROUND**

{2}     Worker was injured on April 13, 2007 when he fell off a scaffold while working for Employer.  Ultimately, Worker and Employer entered into a stipulated settlement which resolved all of the issues regarding Worker's claim with the exception of Permanent Partial Disability (PPD) modifier benefits.

{3}     Both parties filed cross-motions for summary judgment before the Workers' Compensation Administration.  Employer argued that the inability of Worker to accept a legitimate return-to-work offer due to his undocumented status should prevent Worker from receiving modifier benefits.  Based on the statutory language, Worker argued that he is entitled to modifier benefits until he actually returns to work, or in the alternative, that Employer knew of his undocumented status.  The Workers' Compensation Judge (WCJ), relying on *Connick v. County of Bernalillo*, 1998-NMCA-060, 125 N.M. 119, 957 P.2d 1153, concluded that Worker's undocumented status meant that he had "voluntarily removed himself from the workforce" and

granted summary judgment in Employer's favor.

{4} The Court of Appeals ultimately issued a memorandum opinion in favor of Employer. *Nuñez v. Armstrong General*, No. 29,522, slip op. (N.M. Ct. App. Jan. 10, 2011). That Court, citing its opinion in *Gonzalez v. Performance Painting, Inc.*, 2011-NMCA-025, 150 N.M. 306, 258 P.3d 1098, affirmed summary judgment in favor of Employer. *Nuñez*, No. 29,522, slip op. at 1. We granted certiorari. 2011-NMCERT-003, 150 N.M. 620, 264 P.3d 521.

**DISCUSSION**

{5} In *Gonzalez v. Performance Painting*, we recently stated that "[w]hether an employer knew or should have known, before the worker was injured, that a worker was undocumented determines whether an employer's rehire offer was legitimate and should be the focus of our inquiry." 2013-NMSC-___, ¶ 26. We also suggested that the best evidence of whether an employer "knew or should have known" may be an inquiry into whether the employer followed appropriate hiring procedures required by federal law, including a properly completed I-9 form. *Id.* ¶¶ 29-31.

{6} But we never said that an I-9 form is necessarily conclusive as to whether an employer knew or should have known of an undocumented worker. For instance, even though an I-9 form is properly completed and the undocumented worker presents false documents, the employer could learn of the worker's undocumented status by other means. The worker could freely tell the employer of his status. The employer could overhear conversations between workers regarding the worker's status. The

3

employer could learn of a worker's status from federal officials. While we cannot recount all the ways an employer could learn of a worker's undocumented status (and we affirm that often the best evidence of this is the I-9 form), we reiterate that the ultimate inquiry is whether the employer knew or should have known that the worker was undocumented.

{7} Turning to the facts of this case, there is evidence in the record that Worker presented false documents when he was initially hired by Employer. The record contains copies of what appear to be false Resident Alien and Social Security cards that Worker presented to Employer when he was initially hired. In addition, the I-9 form itself was attached to Worker's cross-motion for summary judgment.

{8} Despite this evidence, Worker alleges that Employer knew he was undocumented. In an affidavit submitted with his cross-motion for summary judgment, Worker claims that "Employer's Superintendent, Mr. Javier Aldaba, knew that [he] did not have proper proof of eligibility to be employed in the United States for the entire course of [his] employment." The affidavit also claims that Mr. Aldaba would warn Worker and others "about ICE raids before the immigration officers arrived at the workplace." Employer rebutted these allegations with an affidavit from Mr. Aldaba denying that he knew Worker was undocumented and denying that he warned Worker about ICE raids.

{9} Despite these competing affidavits, the Workers' Compensation Judge made no findings regarding whether Employer knew or should have known of Worker's

4

undocumented status. Instead, the Worker's Compensation Judge ruled that under *Connick* Worker had voluntarily taken himself out of the workforce and therefore was not entitled to modifier benefits, a decision we reverse for the reasons set forth in *Gonzalez*. In fairness, it was not clear then that what the Employer knew and when did he know it would become such a pivotal issue. After *Gonzalez*, the importance of that question is now self-evident, and therefore, the parties and the WCJ should be afforded an opportunity to develop a full record on that question.

**CONCLUSION**

{10}     This case is reversed and remanded to the Worker's Compensation Administration.

{11}     **IT IS SO ORDERED**


_____
**PETRA JIMENEZ MAES, Chief Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**CHARLES W. DANIELS, Justice**

_____

**BARBARA J. VIGIL, Justice**