This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38393**

**HENRY P. SALAZAR,**

Worker-Appellant,

v.

**BERNALILLO COUNTY WATER UTILITY AUTHORITY and CCMSI,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Rachel A. Bayless, Hearing Officer**

Fogel Law Firm
Patrick L. Fogel
Albuquerque, NM

for Appellant

Kimberly A. Syra
Veguita, NM

for Appellees

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}** After Henry P. Salazar (Worker) retired from working for Bernalillo County Water Utility Authority (Employer), he petitioned for modifications (statutory modifiers) to permanent partial disability (PPD) benefits, as provided for by NMSA 1978, Section 52-1-26 (1990, amended 2017)[1] of the Workers' Compensation Act (the Act), NMSA 1978,

---

1The 1990 version of Section 52-1-26 applies to this case because it was the version in effect at the time of Worker's injury in September 2016. *See Jojola v. Aetna Life & Cas.*, 1989-NMCA-085, ¶ 7, 109 N.M. 142, 782 P.2d 395 ("[I]n the absence of express statutory language or compelling reasons to the contrary,

§§ 52-1-1 to -70 (1929, as amended through 2017). The workers' compensation judge (WCJ) denied Worker statutory modifiers, and Worker appeals. Because Worker has not convinced us that the WCJ erred, we affirm.

**BACKGROUND**

**{2}**     The facts relevant to this appeal are undisputed. In September 2016 Worker suffered injuries to his left shoulder, left elbow, and low back when he tripped and fell at work. Worker returned to work the following week. He reached maximum medical improvement (MMI) about a year later and, shortly thereafter, filed a complaint with the Workers' Compensation Administration for basic PPD benefits, which Employer paid. *See Cordova v. KSL-Union*, 2012-NMCA-083, ¶ 5, 285 P.3d 686 (providing that at the time a worker, who suffers a compensable injury resulting in PPD, reaches MMI, the worker is entitled to PPD benefits).

**{3}**     Worker remained employed with Employer through July 2018, at which point he notified Employer he was retiring. Worker's decision to retire after twenty-seven years of work was based solely on a pulmonary health condition he developed while working for a previous employer. In retiring, Worker was following the advice of his doctor, who had reasoned that Worker's job with Employer exposed him to chemicals exacerbating his pulmonary condition. Worker waived any claim that his preexisting pulmonary condition was aggravated while working for Employer. As of the WCJ's decision in this case, Worker had not worked since his retirement; nor did Worker claim that he sought, but was unable to obtain, other employment.[2]

**{4}**     After retiring, Worker filed a complaint seeking statutory modifiers under Section 52-1-26(C), which increase the base award of PPD benefits. *See Gonzalez v. Performance Painting, Inc.*, 2013-NMSC-021, ¶ 11, 303 P.3d 802. The case went to trial, and the WCJ issued a compensation order ruling, among other things, that Worker was not entitled to statutory modifiers. Worker appeals only the WCJ's denial of statutory modifiers.

**DISCUSSION**

**{5}**     Before we address Worker's contention that the WCJ erred in denying statutory modifiers, we first review the relevant law on PPD benefits for needed context.

**I.     PPD Benefits and Statutory Modifiers**

---

any new provisions of the . . . Act shall apply only to causes of action accruing after the effective date of the provision."). All references in this opinion to Section 52-1-26 are to the 1990 version of that statute.
[2]Worker suggests in his reply brief that he intends to return to work. Worker, however, provides no record citation for this contention. Given this and the timing of his contention, it does not factor into our analysis. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence."); *see also* Hale *v. Basin Motor Co.*, 1990-NMSC-068, ¶ 23, 110 N.M. 314, 795 P.2d 1006 (declining to address an issue that was raised for the first time in the reply brief).

**{6}** "PPD benefits are payable under Section 52-1-26 of the Act when a worker suffers a permanent impairment resulting from an injury arising out of and in the course of employment." *Cordova*, 2012-NMCA-083, ¶ 9. PPD benefits are "determined by calculating the worker's impairment[,]" which may be increased through statutory modifiers based on the worker's age, education, and physical capacity. Section 52-1-26(C), (D) (conditionally providing for modifications pursuant to Sections 52-1-26.1 through -.26.4). Statutory modifiers are designed to "address problems associated with a worker's projected difficulty in obtaining and returning to work after reaching MMI." *Cordova*, 2012-NMCA-083, ¶ 11.

**{7}** A permanently disabled worker, however, is not always entitled to statutory modifiers; under certain circumstances, the worker's PPD benefits are based on the impairment alone. Namely, "[i]f, on or after the date of [MMI], an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's [PPD] rating shall be equal to his impairment and shall not be subject to the modifications calculated pursuant to Sections 52-1-26.1 through 52-1-26.4." Section 52-1-26(D). Thus, "if a worker returns to work at a wage equal to or greater than the pre-injury wage, the [PPD] rating remains at the level of the worker's impairment rating and is not subject to the statutory modifiers, no matter what his [or her] age, education and physical capacity." *Connick v. Cnty. of Bernalillo*, 1998-NMCA-060, ¶ 6, 125 N.M. 119, 957 P.2d 1153. A plain reading of Section 52-1-26(D) might suggest that a worker could intentionally evade this limitation on statutory modifiers by voluntary unemployment or underemployment. *See Connick*, 1998-NMCA-060, ¶ 8.

**{8}** This Court, however, has repeatedly rejected such a reading because it would be contrary to the Act and would "violate the policy of encouraging employment and independence from compensation benefits[.]" *Jeffrey v. Hays Plumbing & Heating*, 1994-NMCA-071, ¶¶ 11, 14, 118 N.M. 60, 878 P.2d 1009 (citing Section 52-1-26(A), which provides that the policy and intent of the Legislature is that "every person who suffers a compensable injury with resulting [PPD] should be provided with the opportunity to return to gainful employment as soon as possible with minimal dependence on compensation awards"); *see also Ruiz v. Los Lunas Pub. Schs.*, 2013-NMCA-085, ¶ 24, 308 P.3d 983 ("Permitting a worker to evade application of [Section 52-1-26(D)] by voluntary unemployment or underemployment is contrary to the purposes of the [Act]."); *Connick*, 1998-NMCA-060, ¶ 6 ("The statutory incentive to return to work is unmistakable."). Thus, "[statutory modifiers] should be denied if a claimant, through voluntary conduct unconnected with his [or her] injury, takes himself [or herself] out of the labor market." *Gonzalez*, 2013-NMSC-021, ¶ 17 (internal quotation marks and citation omitted); *see also Jeffrey*, 1994-NMCA-071, ¶ 12 (same). This Court, however, has taken the view that not every rejection of an offer of employment will amount to voluntary unemployment or underemployment. *Jeffrey*, 1994-NMCA-071, ¶ 15. Rather, a worker's rejection of an offer will preclude statutory modifiers if the rejection was unreasonable. *Id.*

**{9}** This Court does not mechanically apply the concepts from *Jeffrey*—of voluntary unemployment or underemployment and unreasonable rejections of work offers—in

determining whether a worker is entitled to statutory modifiers. Instead, this Court considers these concepts in light of the legislative policies of encouraging employment and independence from compensation benefits and the purpose at which statutory modifiers are aimed. *See, e.g.*, *Cordova*, 2012-NMCA-083, ¶ 23 ("[a]pplying the policies and directives of Section 52-1-26 and the reasoning of our case law" to determine whether the claimant was entitled to statutory modifiers); *Connick*, 1998-NMCA-060, ¶ 9 ("Based on the purpose and intent behind Section 52-1-26, and the statutory provision in Subsection D eliminating statutory modifiers in certain circumstances, we believe the [L]egislature intended that the present [c]laimant would be denied the benefit of the statutory modifiers" because "[the c]laimant's inability to return to work resulted from his own conduct, murdering his wife, which is surely 'unconnected with his injury.' "); *see also, e.g.*, *Hawkins v. McDonald's*, 2014-NMCA-048, ¶ 25, 323 P.3d 932 (applying the statutory principles outlined above and holding that "[the w]orker's decision not to seek employment at a fast food restaurant [due to lifting restrictions from her work injury] and to further her education [does not] mean[] she is voluntarily unemployed or that she refuses to take reasonable steps to help herself" (alteration, internal quotation marks, and citation omitted)).

## II. Worker Fails to Establish the WCJ Erred in Denying Statutory Modifiers

**{10}**    Turning now to Worker's claims on appeal, Worker makes two arguments, as best we can tell: (1) the WCJ found Worker's reason for leaving employment "reasonable" and this compels Worker's entitlement to statutory modifiers under *Cordova*, an opinion of this Court involving the award of statutory modifiers to a union retiree, and (2) the WCJ adopted a new legal standard that is contrary to *Cordova*. Although our review of these matters is de novo, *see Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320 (providing that we review the WCJ's application of the law to the facts, as matters of law, de novo), it remains "the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the [trial] court has erred." *Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261. For the reasons that follow, Worker has not met his burden.

**{11}**    As for the first argument, Worker reasons that, "[u]nder . . . *Cordova* the standard is whether or not the reason for leaving the employment was reasonable" and "[s]ince the [WCJ] found that . . . Worker's reasons for leaving employment were reasonable[, statutory] modifiers should be awarded[.]" We do not agree.

**{12}**    Even if we accept Worker's contention that the WCJ unambiguously found that Worker's reason for leaving employment was reasonable,[3] this does not, as Worker

---

3It is not at all clear that the WCJ indeed found "Worker's reasons for leaving employment were reasonable[,]" as Worker contends. The compensation order includes no finding to that precise effect and instead includes varying statements on the subject: (1) "Worker's decision to retire due to personal health reasons was reasonable but premature under the totality of evidence"; (2) "Although Worker's decision to retire . . . was reasonable, the timing of Worker's premature decision and the reasons for his decision had nothing to do with the work accident or work injuries"; (3) "Worker's reasonable decision to voluntarily retire from employment . . . was . . . not a rejection of a return to work offer"; and (4) "Worker voluntarily

contends, compel the award of statutory modifiers under *Cordova* without further inquiry. In *Cordova*, the worker, a union member, suffered a workplace injury and thereafter retired from the union workforce because he had reached his maximum union pension. 2012-NMCA-083, ¶ 3. Although the worker sought employment after his union retirement, the worker's injuries prevented him from securing subsequent work. *Id.* ¶ 4. The worker nonetheless planned to go back to work if he was able to do so. *Id.* Under these circumstances, this Court affirmed the award of statutory modifiers on the basis that the worker's decision to retire from union employment was "reasonable." *Id.* ¶ 1. In reaching this conclusion, this Court took into account that the worker's desire "to return to employment outside of the union[,]" *id.* ¶ 23, was in keeping with both the legislative policy favoring reemployment, *see generally id.* ¶¶ 9, 11-13, 15, and also the purpose of statutory modifiers—to assist workers who have difficulty obtaining work after reaching MMI, *see generally id.* ¶¶ 10-11. *Id.* ¶ 23. This Court further reasoned that the employer's interests were protected, in that it could be relieved of its liability for statutory modifiers under Section 52-1-26(D), should the worker find subsequent employment at or above his pre-injury wage. *Cordova*, 2012-NMCA-083, ¶ 23.

**{13}** In short, we do not read *Cordova* to establish, as Worker suggests, that a worker's reason for leaving employment need only be deemed reasonable by a WCJ for him to qualify for statutory modifiers. Such a limited construction of *Cordova* fails to account for the broader legislative policies and directives of Section 52-1-26, as articulated in *Cordova* and other cases. *See, e.g.*, *Cordova*, 2012-NMCA-083, ¶¶ 11-13, 15-16, 23. What is more, Worker does not explain why—when due consideration is given to these policies and directives—the WCJ erred in denying him statutory modifiers. And we do not venture a guess at, or further consider, such an argument. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (providing that an appellate court will not "guess at what a party's arguments might be" or "develop the arguments itself" in the face of inadequate briefing (alteration, internal quotation marks, and citation omitted)).

**{14}** As for the second argument—regarding Worker's contention that the WCJ applied a new legal standard in denying statutory modifiers—Worker singles out a finding of fact from approximately forty findings and conclusions relating to statutory modifiers adopted by the WCJ. The cited finding reads: "When [Worker] decided to retire for reasons having nothing to do with the work accident or work related injuries, Worker did not reject a return to work offer from Employer as contemplated by the Act." Worker contends this finding evinces the WCJ's adoption of a requirement that there be causal connection between the work-related injury and the reason the worker rejected

removed himself from employment . . . not based on a reasonable rejection of an offer of work[.]" These statements raise a host of questions, including whether the supposed "premature" decision to retire could also be "reasonable," whether Worker's "voluntary" retirement could nonetheless be "reasonable," and whether Worker could "reasonably" remove himself from employment while "[un]reasonab[ly] reject[ing]" Employer's offer of work. While we might simply resolve such potentially ambiguous or inconsistent findings in favor of upholding the WCJ's judgment, *see Motes v. Curry Cnty. Adult Det. Ctr.*, 2019-NMCA-022, ¶ 14, 458 P.3d 557 ("In cases involving uncertain, doubtful, or ambiguous findings, we are bound to indulge every presumption to sustain the judgment." (internal quotation marks and citation omitted)), it is not necessary to do so, as we explain.

the employer's work offer, which, Worker contends, is contrary to this Court's opinion in *Cordova*. We do not agree.

**{15}** This finding—read in conjunction with the WCJ's other pertinent findings and conclusions, as it must be—evinces that the WCJ correctly understood and applied *Cordova*. *See Jones v. Auge*, 2015-NMCA-016, ¶ 2, 344 P.3d 989 (providing that findings of fact "are sufficient if a fair consideration of *all of them taken together* supports the judgment entered below" (emphasis added) (internal quotation marks and citation omitted)); *see also Ortiz v. Overland Express*, 2010-NMSC-021, ¶ 24, 148 N.M. 405, 237 P.3d 707 (providing that findings of fact "*must be read together* and the conclusions of law flow therefrom" (emphasis added) (internal quotation marks and citation omitted)). While it is true, as Worker points out, that the worker in *Cordova* did not leave his union job because of his work injury but nevertheless was entitled to statutory modifiers, this misses the point. The worker in *Cordova* left his union job, but he did not intend to remove himself entirely from the workforce. *See* 2012-NMCA-083, ¶ 4. Instead, the worker attempted to secure non-union employment, but was unable to *because of* his work injury. *See id.* Thus, in *Cordova*, the worker could not be said to, "through voluntary conduct unconnected with his injury, [have] take[n] himself out of the labor market." *Id.* ¶ 15. Such is not the case here.

**{16}** A fair consideration of the WCJ's pertinent findings and conclusions is that the WCJ found that Worker voluntarily removed himself from the workforce entirely for reasons unrelated to his work injury and concluded that, under these circumstances, the award of statutory modifiers would be contrary to the legislative policies and directives articulated in Section 52-1-26. Worker does not explain why such a determination, under the facts of this case, is inconsistent with *Cordova* or is otherwise an erroneous application of Section 52-1-26 in light of the relevant policy considerations. And again, we do not venture a guess at, or further consider, such an argument. *See Elane Photography*, 2013-NMSC-040, ¶ 70. For these reasons, Worker has not persuaded us that the WCJ applied an incorrect legal standard or otherwise misapplied *Cordova* to the facts of this case. *See Premier Tr. of Nev.*, 2021-NMCA-004, ¶ 10.

**CONCLUSION**

**{17}** For the foregoing reasons, we affirm.

**{18}** **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JANE B. YOHALEM, Judge**